Campbell *v.* Evans.

The judgment should be affirmed, with costs.

New trial granted.

[New York General Term, June 7, 1869. *Clerke, Ingraham* and *Sutherland,* Justices.]

CAMPBELL *vs.* EVANS.

Whatever opinion may be entertained as to the remedies provided by the act of the legislature of May 9, 1867, (*Laws of* 1867, *ch.* 814,) amending the act of 1862, entitled "An act to prevent animals from running at large in the public highways," in relation to private trespasses—concerning which, *it seems*, the act in its amended form is not obnoxious to judicial condemnation—it is beyond question that, as applied to the case of animals at large in the highways, the provisions of the act of 1867 are clearly within the legislative authority, as a just and beneficent exercise of the police power of the government.

The case of *Rockwell* v. *Nearing*, (35 *N. Y. Rep.* 302,) distinguished from the present.

Where animals are running at large upon the highway, and are seized by the overseer of highways in the district where found, such a case is not only not within the principle decided in *Rockwell* v. *Nearing*, but is expressly excepted from it in the opinions of both the judges, rendered in that case.

Where animals are found running at large in the highway, and seized by the overseer of highways, and thereupon complaint is made in writing by him, stating the facts, to a justice of the town, it is not necessary the complaint should state that the animals were running at large "by the sufferance or permission of the owner."

The question whether the escape has been suffered or permitted by the owner is not a jurisdictional fact.

The first section of the act makes it unlawful for animals to run at large on the highways, and imposes upon overseers the duty of seizing and taking such animals into their possession; and this is the only fact necessary to be shown, to justify the officer in making the seizure. If the complaint shows this, it gives the justice jurisdiction, in the very words of the statute, to hear and determine the matter.

Campbell *v.* Evans.

An affidavit, made by the person serving a summons issued by a justice of the peace, under the act of 1867, and indorsed thereon, stating that he has served the same, together with proof that such person is a constable, is sufficient to authorize the justice to proceed with the case; although it does not appear by the return that the person making it was a constable.

The 3d section of the act of 1867, which provides that service of the summons shall be made by posting the same in at least six public and conspicuous places in the town, and that one of said places "shall be the nearest district school-house," obviously means the district school-house nearest the *place where the seizure was made*—not nearest to the *justice's office.*

A return stating that the officer served the summons "by posting a copy thereof in six public and conspicuous places in said town, one of said places being the district school-house nearest to said premises," being in the very words of the statute, is to be understood as having conformed to it, and is therefore sufficient.

If it be held, as it must, that the constitution does not positively require personal notice in order to constitute a legal proceeding due process of law, then it belongs to the legislature to determine, in the particular instance, whether the case calls for this kind of exceptional legislation, and what manner of constructive notice shall be sufficient to reasonably apprise the party proceeded against of the legal steps which were taken against him.

APPEAL by the plaintiff from a judgment entered at the circuit on a trial before the court without a jury. The action was for the claim and delivery of two colts and one horse.

The defendant by his answer denied the unlawful detention, and alleged that on the 28th day of May, 1868, and at the time of the taking by him of the said property he, the defendant, was overseer of highways in district number eight in the town of Elbridge, Onondaga county; that on or about the 28th day of May, 1868, the said property was running at large in the public highway in said district number eight, in said town of Elbridge, contrary to law in such cases made and provided; and that on the said 28th of May the said property was taken into custody by the defendant in the proper discharge of his duty as such overseer of highways, under and by authority of section 3, chapter 814, of the laws of the State of New York,

entitled an act to amend an act entitled "An act to prevent animals from running at large in the public highways," passed May 9, 1867, by the legislature of said State; that the process relating to the arrest and detention of said animals was issued by, and the proceedings therein had before Charles G. McGowan, one of the justices of the peace, in and for said town of Elbridge, and that a fine was duly imposed upon the plaintiff according to law, by the said justice of the peace, amounting, together with the costs of such proceeding, to the sum of $30.50, which said fine or any part thereof has not been paid by said defendant or by any other person in his behalf. That the plaintiff has retaken said property, and now has the same and every part thereof in his possession, and the defendant had no authority or control over the same whatever. Wherefore the defendant demanded that the complaint herein be dismissed, and that judgment be rendered against the plaintiff, and in favor of said defendant, for the said sum of $30.50, together with the costs of this action, &c. On the trial the following facts were admitted by the respective counsel for the parties, to wit:

That on the 28th day of May, A. D. 1868, and for a long time prior thereto, the plaintiff was the owner of the horse and colts mentioned in the complaint in this action. That while so being such owner, the plaintiff, about the hour of four o'clock P. M. of that day, demanded the same of the defendant, who was then in possession thereof, and that the defendant refused to deliver them to or let the plaintiff have the possession thereof. That thereupon, immediately after such demand and on the same day, the plaintiff commenced this action, and thereby obtained the possession of said property. That said property was then of the value of $600, and that such demand and refusal was in the town of Elbridge, in the county of Onondaga. The plaintiff here rested.

Campbell *v.* Evans.

The defendant offered in evidence the complaint, the summons and the affidavit of service thereof, to which the plaintiff objected severally and collectively, as not being in accordance with the statute, and as failing to confer jurisdiction upon the justice of the peace, or justify the defendant in the taking or detention of the property in question. And also upon the ground that the provisions of the act under which said proceedings were had were especially, as against the plaintiff in this action, unconstitutional and void. The counsel for the plaintiff also objected to the reading in evidence the proceedings before, and the judgment rendered by, said justice, on the grounds, among others, that said proceedings were void; that the justice had no jurisdiction to entertain the same, or to render said judgment; and that the provisions of the act under which such proceedings were claimed to be had were unconstitutional and void, especially as against the plaintiff in this action. All and every of which objections were overruled by the court, and to which decisions and rulings the counsel for the plaintiff excepted. The said complaint, summons and affidavit of service thereof, and the said proceedings and judgment before said justice, were then by the defendant's counsel read in evidence. The counsel for the defendant next showed in evidence that the said justice, immediately upon the rendition of said judgment, issued and delivered to a constable of said town his warrant under his hand directed to any constable of said town, commanding him to sell said animals at public auction for the best price he could obtain for the same, at a time and place therein specified, and to make return thereof to said justice, at a time and place specified, as provided by said act. To the introduction in evidence of said warrant the counsel for the plaintiff objected, on the grounds, among others, before urged against the introduction in evidence of said complaint, summons, affidavit

of service thereof, and the proceedings and judgment by and before said justice of the peace; which objection was also overruled by the court, and to which ruling the plaintiff's counsel excepted. It was then proved by the counsel for the defendant, under the objections and exceptions of the plaintiff's counsel, that the said Ashley was on the 28th day of May, 1868, and ever since had been an elector and constable of said town of Elbridge. It was admitted by the respective counsel that after the adjudication by and before the said justice, and the issuing of said warrant by him, and on the same day, the plaintiff demanded of the defendant the possession of said animals, he, the defendant, then having them in his possession, and that the defendant refused to deliver the same to the plaintiff, or allow him to take the same, and that thereupon, on the same day, after such refusal, this action was commenced. It was further admitted by the respective counsel that at the time the seizure of said animals-was made by the defendant, the plaintiff was a resident of the said road district and had ever since been, and that when the seizure was made he, the defendant, knew that the plaintiff was the owner of said animals, and that he gave him no formal notice of such seizure.

The evidence here closed. The court found as matters of fact: First. That on the 28th day of May, 1868, and until after the commencement of this action, the said plaintiff was the owner of the animals described in the complaint in this action. Second. That on that day the defendant, then being overseer of the highways in district No. 8, in the town of Elbridge, seized and took into his possession the said animals, which were then running at large in the highway in said district, and continued to retain possession thereof until the 9th day of June, 1868, and until after the adjudication and issuing the warrant by C. G. McGowan, Esq., a justice of the peace, as herein-

Campbell *v.* Evans.

after mentioned, when the said plaintiff demanded of the defendant the said animals, and the defendant refused to deliver them to or to allow the plaintiff to take possession of them, and that thereupon this action was commenced, and the said animals, by virtue of the proceedings therein, delivered by the sheriff to the plaintiff. Third. That the value of said animals was $600. Fourth. That immediately upon making such seizure the defendant made a complaint in writing, before Charles G. McGowan, a justice of the peace of the town of Elbridge, and verified the same. Fifth. That upon making of said complaint by the defendant, the said justice issued a summons, dated May 28th, and returnable before him on the 9th day of June, 1868. Sixth. That on the 9th day of June, 1868, at the time and place mentioned in said summons for the return thereof, the defendant in this action appeared before the said justice, and the plaintiff in this action appeared for the purpose solely of objecting to the jurisdiction of said justice. That he did so object, and upon such objection being overruled, the plaintiff in this action participated no further in said proceedings, and forthwith left the presence of said justice. Seventh. That the only return or proof of service of said summons consisted of the affidavit of J. O. Ashley, indorsed on said summons, in which he swore that he served the same on the 29th of May, 1868, "by posting a copy thereof in six public and conspicuous places in said town, one of said places being the district school-house nearest to said premises." Eighth. That upon the return of said summons on the said 9th day of June, 1868, the said justice, upon hearing testimony on the part of the complainant, forthwith rendered a judgment that said animals be sold as provided by section 3, of chapter 814, of the Laws of the State of New York, passed by the legislature of said State, May 9th,

1867, and that said complainant be awarded the sum of $1
for each animal so seized as aforesaid, .    .    .    .    $3  00

   For care and keeping the same to date of suit,    4  50

   In costs of suit, .   .   .   .   .   .   .   .   .   .   .   .    5  00

   J. P. for each animal $1, .   .   .   .   .   .   .   .   .    3  00

   Penalty to O. P. $5 for each animal,    .   .   .   15  00

                                            $30  50

Ninth. That on the 28th day of May, 1868, said Ashley
was and ever since has been an elector and constable of
said town of Elbridge.   Tenth. That the said justice did
not by writing on said summons authorize the said Ashley
to serve said summons.   Eleventh. That at the time of
the seizure of said animals the plaintiff resided in the road
district with the defendant, where the same were seized,
and has since continued to reside there.   That he was not
notified by the defendant of such seizure, nor was said
summons served personally on the plaintiff.   Twelfth. That
upon the same day of the making of said adjudication by
the justice, and immediately thereafter, the said justice
issued his warrant directed to any constable of said town,
for the sale of said animals in the form and manner pre-
scribed by said act, and that thereafter, on the same day,
the plaintiff demanded the said animals of the defendant
as aforesaid.   Thirteenth. That there was no evidence in
this action, or before the justice, showing whether the ani-
mals were or were not, when seized by the defendant,
running at large in the highway by the sufferance or per-
mission of the plaintiff.

As conclusions of law the said court found: 1st. That the
complaint before said justice was sufficient to justify the
issuing by said justice of the summons.   2d. That the said
summons was in due form of law, and valid.   3d. That the
affidavit of J. O. Ashley, indorsed on said summons, con-
tained sufficient proof of the due service of said summons.
4th. That the seizure of the said animals by the defend-

ant, his complaint before said justice, the summons issued thereon by said justice and the affidavit indorsed thereon showing the posting thereof, gave to the said justice of the peace jurisdiction to issue his warrant for the sale of said animals, and justified the defendant in refusing to surrender said property to the plaintiff. ⸳ 5th. That the provisions of chapter 814 of the Session Laws of 1867, or any part thereof, authorizing said proceedings for the said seizure and sale of said property, were not in conflict with any part of the constitutions of the State of New York or of the United States. 6th. That the defendant was entitled to judgment for the return of said property, and to damages for the detention thereof.

*W. & A. B. Porter*, for the appellant. I. The respondent, at the time of the demand made by the appellant, was justified in retaining the possession of the animals only upon the fact that the justice, when he made the adjudication and issued the warrant, had jurisdiction and authority so to do. He had no such jurisdiction. 1. The complaint before the justice did not state the facts authorizing the seizure, as required by section 3 of chapter 814, Session Laws of 1867. (*a.*) It does not state that the appellant was an overseer of highways. The only allegation upon this subject is, that he seized the animals in the highway, which he found running at large therein, within his jurisdiction, as "overseer of highways," &c. This is not an allegation or statement that the respondent was such overseer of highways. An allegation that a person did an act *as* an officer, is not an allegation that the person was at the time such officer. (*Ex parte Bank of Monroe*, 7 *Hill*, 177. *Ex parte Shumway*, 4 *Denio*, 258. *Staples* v. *Fairchild*, 3 *Comst.* 41.) (*b.*) It does not state that the respondent was an overseer of highways in road district No. 8, in the town of Elbridge, unless the clause in the complaint on that subject be regarded as an allegation

to that effect, and in that case there is nothing in the complaint showing that the animals were in the highway "in said district No. 8, in said town," and a failure to make either statement will be fatal to the complaint. This clause in the complaint must be construed either as having reference to and describing the respondent's *office,* or as describing the *locality* where the animals were seized. It cannot be used for a double purpose. If it be used to describe the locality of the seizure, then there is nothing showing that the respondent was overseer of that locality; or, if it is used to show that he was overseer of that locality, then there is nothing showing that the animals were seized in that district. Should the respondent be indicted for falsely swearing, in his complaint, "that he was overseer of highways in district No. 8, in the town of Elbridge," and the court should construe the clause in question as applying to the locality of the seizure, he would of course be discharged. And, on the other hand, should he be indicted for falsely swearing, in the complaint, that the animals were running at large in district No. 8, of the town of Elbridge, and the court should construe the clause in question as having reference to and being descriptive of his office, or the *place* where he found them, he would be discharged on that ground. (*c.*) The overseer of highways must make the seizure within his district. (Sec. 1 of said act.) The defendant could not be indicted for falsely swearing, in his complaint, that he seized the animals within district No. 8, as there is no such allegation in his complaint. His swearing that he found them there is entirely consistent with his seizure of them elsewhere. In proceedings of this kind the statute must be strictly followed. (*Rockwell* v. *Nearing,* 35 *N. Y. Rep.* 310, 312.) (*d.*) The complainant should have stated in his complaint that the animals were running at large by the sufferance or permission of the owner. (*Idem,* 313, *per Morgan, J.*) This is the only reasonable construction of the statute, for

the reasons: 1st. That the statute imposes no penalty or costs, and provides for no sale or disposition of animals, unless such as are "suffered or permitted" by the owner to run at large. (See last clause of § 3 of said act.) 2d. The statute clearly intends to give the owner of the cattle an opportunity to show, as a defense, that the animals distrained were not at large by his sufferance or permission, but in all cases, before any defense can be shown, the owner must deny, on oath, some or all the facts stated in the complaint, and should this fact not be stated in the complaint, the owner would lose the benefit of such defense. It would seem to follow, therefore, that such allegation should be made in the complaint. If it be conceded, as it will be, that the owner is entitled to prove such defense, then it cannot be established in this and similar cases, where such allegation in the complaint is wanting, unless the owner consents to commit perjury by denying a complaint, like the one in this case, every word of which is true; that is, he will be under the necessity of swearing to a falsehood in order to be let in to prove the truth. If the complaint, therefore, wanting this allegation, shall be held to be in accordance with the statute, it is respectfully submitted that the statute is not in accordance with the constitution, as it denies to a party the right of being heard in defense of his rights, and thereby deprives him of his property without due process of law. (*Taylor* v. *Porter,* 4 *Hill,* 146, 147. *Westervelt* v. *Gregg,* 2 *Kern.* 209, 212. *Wynehamer* v. *The People,* 3 *id.* 395, 419, 434, 468. *Rockwell* v. *Nearing,* 35 *N. Y. Rep.* 306, 307.) 3d. Another reason showing that such allegation should be contained in the complaint is, if no one appears to show cause, no evidence is allowable before the justice, and he proceeds to issue his warrant upon the facts contained in the complaint. How then can the complaint omit the allegation which alone justifies the sale of the property, as appears to have been done in this case. If

Campbell *v.* Evans.

the views of Justice Morgan in the case of *Rockwell* v. *Nearing* are sound, of which there is no doubt, that the sufferance or permission of the owner is a fact essential to the liability of such owner, it follows that such fact, among others, should, according to the requirements of the act, be stated in the complaint. It not having been so stated, consequently renders the complaint and all proceedings based upon it void. An illustration of the propriety of this position is found in this case before the justice, when, without any allegation in the complaint, or proof before the justice, that the animals were suffered or permitted to run at large, he has proceeded to issue a warrant for the sale of the property, and adjudged penalties and costs against the owner to the amount of $30.50, which the statute does not authorize him to do, unless the animals shall have been "permitted," &c. 2. The summons issued by the justice was void. (*a.*) The act in question (§ 2) requires that "the justice shall issue a summons stating the fact of such seizure." The summons in this case does not state the fact of the seizure, but merely recites that William S. Evans had stated the fact of such seizure in his complaint to the justice. (*b.*) If the summons in this case be regarded as a "process," it should have been in the name of the people of the State of New York. (2 *Bur. L. Dic.* 497. 2 *R. S.* 275, § 16, *chap.* 3, *title* 1.) (*c.*) The paper claimed to be a summons is not one in fact, but merely an order by the justice to show cause. (*See* 6 *Jac. Law Dic.* 137, *as to meaning of term.*) 3. There was no return upon the summons, or any proof showing service thereof. Where no one appears to show cause, such return or proof is necessary to confer jurisdiction or authority upon the justice to adjudicate upon the case, or to issue a warrant for the sale of the property. (*Sess. Laws of 1867, ch.* 814, § 3. 14 *John.* 481.) (*a.*) The only return or proof of service was the affidavit of J. O. Ashley. So far as the action of the justice and the question of his juris-

Campbell *v.* Evans.

diction is concerned, the service must be regarded as made by a person " other than a constable," for the reason that Ashley did not sign his name officially; nor was there any evidence before the justice that Ashley was a constable, and service by a person other than a constable cannot be made, unless by a person duly authorized by the justice in writing, upon the summons. (See § 3 of said act.) Such authority appears not to have been given. (*b.*) The affidavit of Ashley is not the proof of service contemplated by the act. 1st. Such proof evidently means oral testimony before the justice, by which an opportunity may be afforded the justice of putting questions to the witness, as to the facts constituting the service. 2d. The affidavit was made out of court three days before the return day, and is extra-judicial. (*c.*) It appearing in this case that the service was in fact made by a constable, as the statute provides for no affidavit or proof of service in such case, it is clear that the affidavit of Ashley (being the constable purporting to have made the service) is extra-judicial and void. It is only in case of service by the person other than a constable, that proof of the facts constituting the service can be introduced. (*d.*) It cannot be claimed that the affidavit, although extra-judicial, is tantamount to a return by Ashley, as constable, or the summons " duly served," as required by the act. 1st. It does not purport to be an official act for which, if false, he could be indicted for a breach of official duty, or sued for a false return, by an aggrieved party. 2d. The statute does not allow the constable, in his return, to make a statement of facts as to the service, leaving it with the justice to decide whether, from the facts stated, the summons be duly " served," but .it makes the constable the sole judge, and imposes upon him the sole responsibility of determining whether he has complied with the statute or not, by requiring him to return the summons simply " duly served." (*e.*) The term " return " has a distinct

legal signification. It means a certificate of the officer acting officially, indorsed on the writ or process returned by him. (5 *Jac. Law Dic. p.* 523, *tit. Return.*) The constable was not, therefore, at liberty to substitute an affidavit for his certificate. (*f.*) The affidavit does not show that a copy of the summons was posted on either the school-house nearest to the justice's office, or the one nearest the place or point where the seizure was made. The act (§ 3) requires one of the notices to be posted on the " nearest district school-house," leaving as a matter of construction what the term "nearest" has reference to. It is manifest, however, that the statute must read one of two ways, to wit, "nearest to the justice's office," or "nearest to the point or place where the seizure was made." But, according to either reading, it will be seen that the affidavit does not show that a notice was posted on the school-house nearest to either place. The expression in the affidavit, "nearest to said premises," if having any meaning, certainly does not mean nearest the justice's office. The only thing mentioned in the whole proceedings to which the term "premises" can with any semblance of propriety be applied, is "road district No. 8, in the town of Elbridge ;" and if the term "premises" be held to have reference to the road district, it is evident that the affidavit is deficient, for the reason that, as between several school-houses, the one which is nearest to the road district may be farthest from the place where the cattle were seized. (*g.*) But it is insisted by us that the term "nearest," in the statute, should be construed as referring to the justice's office, because, 1st. The justice's office is the only place which appears to be referred to in the section prior to the occurrence of the term "nearest." 2d. The posting of this summons is spoken of in this section as the posting of a "notice," and is intended to perform in a great measure the office of posted notices in the original act, of which this is an amendment. That act (§ 3) pro-

vided that one of the notices should be affixed on the "district school-house nearest to the residence of such justice or commissioner," and an intention on the part of the legislature to depart from or change this provision will not be presumed. (*Taylor* v. *Delancy*, 2 *Caines' Cases*, 150, 151.) (*h.*) It is claimed by us, however, that the expression in the affidavit, "nearest to said premises," is utterly meaningless, and of no-effect, rendering the return a nullity. 4. The taking of the animals by the respondent was a distress, and subject to all the incidents of a distress at common law, one of which is that the distrainor must, after the distress is made, follow the directions of the statute, if any, in relation to the final disposition of the property, and a failure to do so will render him a trespasser *ab initio.* (*Sackrider* v. *McDonald*, 10 *John.* 253, 258. *Durmot* v. *Smith*, 4 *Denio*, 320. *The Six Carpenters' case*, 8 *Coke*, 290. 3 *B. Inst.* 43.) The statute requires the distrainor immediately to make complaint in writing, stating the "facts." At the time of the commencement of this action, over ten days had elapsed, and he had failed to make such complaint, but still claimed to hold the property. It is evident he was, by such omission, a trespasser *ab initio ;* at all events, that he was not, at the time demand was made, justified in further retaining possession of the property. At the time the demand was made, the justice had completed all the proceedings in relation to the property which it was competent for him to entertain, and if the final adjudication and issuing of the warrant by him for the sale of the property was void, either from defect in the complaint or summons, or on account of a want of proof of the service of the summons, certainly the defendant was not then justified in further retaining possession of the property.

II. The act in question, especially as regards the respondent in this case, is in conflict with the constitution, as it allows the taking and depriving a person of property

without due process of law. 1. It deprives the appellant of the privilege of being heard in defense of his rights and the preservation of his property, inasmuch as it requires him to swear falsely as a condition to his being heard in such defense. (*See ante, sub.* (*c*,) *sec.* 3, *point* 1. *Empire City Bank*, 18 *N. Y. Rep.* 215, *per Denio, J.*) Judge Denio, in this case, says (by implication, at least,) that an act depriving a person of property is unconstitutional which affords him no opportunity of defending. 2. The provision of this act for giving notice and bringing known resident parties into court by a proceeding not looking to a personal service of the summons or notice of the proceedings, is in that respect unlike any proceedings to divest persons of their property allowed at the time of the adoption of the present constitution, and cannot be regarded as a proceeding "by due process of law," within the meaning of that instrument. 3. The act in question requires uo stated time for posting notices. If posted only one day, the constable would be protected in making the return "duly served," as prescribed by statute, and the justice would have jurisdiction. This renders the proceeding totally unlike any of those where notice was given by advertisement at the time of the adoption of the constitution, and cannot, on that account, be regarded due process of law. Such provision for giving notice is merely "colorable and illusory," and on that account a fraud upon the constitution. (*See opinion of Denio, J., in matter of the Empire Bank*, 18 *N. Y. Rep.* 216.) 4. It allows a justice of the peace to award *damages* and compensation to be taken out of the property of another, without affording him a trial or opportunity of contesting the *amount* of damages or compensation.

*C. B. Sedgwick*, for the respondent. I. The act of 1867 (chap. 814) is valid and constitutional. (*Rockwell* v. *Nearing*, 35 *N. Y. Rep.* 302.) The obnoxious features of the

Campbell *v.* Evans.

act of 1862 (chap. 459) are all removed by the amendments of 1867. The benefits to the public of preventing animals running at large in the highways, are so obvious and so important that the courts should seek to uphold laws enacted to secure that end. It is a proper and beneficial exercise of the police power in the State. *(Opinion of Morgan, J., in case cited.)*

II. All the facts necessary to give the magistrate jurisdiction existed, and the necessary proceedings were taken, as required by the statute. 1. By the first clause of section first it is made unlawful for cattle to run at large in the highway, and it is the duty of every overseer of highways within his district to seize and take into his possession, and keep till disposed of according to law, any animal so found running at large. (*a.*) This compels the overseer to seize the animals running at large, that is, not being in charge of the master or owner, or his servant, at the time, without regard to the question whether the escape of the animal upon the highway is voluntary or involuntary, or accidental, so far as the owner is concerned. (*b.*) The question of whether the escape is voluntary, and has been suffered or permitted by the owner, is only material on the trial, and is not a jurisdictional fact. That it is accidental or involuntary may be proved by the owner to defeat the claim for a penalty or forfeiture. Accordingly, if the justice errs in respect to this, the remedy is by certiorari or appeal, but the proceedings are not void. (See section 1, second clause, and compare with first clause.) 2. The seizure having been made, the third section requires certain further proceedings to give the magistrate jurisdiction. (*a.*) The overseer is immediately to make a complaint in writing, stating the facts, to a justice of the peace of the town. This was complied with. 3. The justice was thereupon clothed with "jurisdiction to hear and determine such matters." (Section 3, second clause.) 4. He is thereupon directed to proceed and forthwith issue his

Campbell *v.* Evans.

summons, as set forth in that section. This was complied with. 5. The summons is to be served by a constable (or by an elector duly qualified and appointed) in the manner specified. 6. The mode of service prescribed; i. e., by posting notices or copy of summons, is not unconstitutional, and is within the power of the legislature. "Personal service is not required to constitute process of law." (*U. S. Trust Co.* v. *U. S. Fire Insurance Co.*, 18 *N. Y. Rep.* 199. *Opinion of Morgan, J., approving opinion of Denio, J.,* 35 *N. Y. Rep.* 314.) 7. The service, as proved by the sworn return of the constable Ashley, was according to the requirements of the statute. It was objected that "the nearest district school-house," mentioned in the act, was the school-house nearest the residence of the magistrate. This is not the true construction, as will be seen by reading the sentence to the end. The terms of the act are plain. The school-house nearest the premises where the seizure is made is the one where the notice would be most likely to attract the notice of the owner, as the magistrate may live in a remote part of the town.

III. The act is of great public utility, and should stand if it is within the legislative power. The rights of the individual owner seem to be well guarded by the subsequent sections. In this case there can be no pretense that there was any want of personal notice, for the owner appeared; and it is hardly possible that it can occur that the owner will not have notice before his property can be disposed of, if the provisions of the law are complied with in good faith. If there is found concealment or oppression under it, the law affords a remedy which the courts will always be glad to administer.

*By the Court,* BACON, P. J. The questions presented for adjudication in this case involve, among others, the constitutionality of the act of 1867, amending the act of 1862, entitled "An act to prevent animals from running at large

Campbell *v.* Evans.

in the public highways." The case presented the follow-
ing facts:. The action is replevin by the plaintiff as the
owner of three horses. · The defendant was overseer of
highways for district No. 8 in Elbridge, and the horses
were found by him running at large opposite his premises
within the said district. As overseer he seized the horses,
and immediately made complaint in writing before a jus-
tice of the town, who thereupon issued a summons, as
required by the act, and placed it in the hands of a con-
stable of the town, by whom it was duly served pursuant
to the directions of the act. On the return day of the
summons, the plaintiff appeared for the purpose only, as
the case states, of objecting to the jurisdiction of the jus-
tice, and particularly on the ground that the complaint
was insufficient, which objections were overruled, and the
plaintiff then withdrew from the court. The defendant
then made proof of the facts which authorized the seizure,
and the penalties provided by the statute were adjudged
by the justice, who subsequently issued his warrant for
the sale, as provided by the act, previous to the execution
of which the plaintiff replevied the property and took it
into his possession, where it has ever since remained.

On the trial the proceedings were all given in evidence
under objections at every stage, and the general objection
was taken that the provisions of the act under which the
proceedings were had were unconstitutional and void.
This proposition is the last one discussed upon the points
of the appellant's counsel. If well taken it is fatal to the
defense, and will render unnecessary the examination of
any other objection, and it should therefore be first dis-
posed of. This objection professes to be founded on the
decision of the Court of Appeals in *Rockwell* v. *Nearing*,
(35 *N. Y. Rep.* 302.) That decision was wholly in refer-
ence to the act of 1862, and arose in a case where animals
were seized while trespassing upon the premises of the
defendant, and not while they were running at large in the

highway. It was in reference to that case that the court held the act unconstitutional, because it authorized the seizure and sale without any appropriate process, of animals found trespassing within a private inclosure. If this were just such a case, it would still be necessary for us to examine the act of 1867, and see whether the amendments introduced into that enactment do not (as they undoubtedly were intended) obviate the defects which existed in the act of 1862, and provide the necessary legal machinery for effectuating the object the legislature had in view, to wit, abating the nuisance of animals running at large to the annoyance of the public, and to the injury of private rights.

But it is not expedient to anticipate such a case, which may hereafter arise, and render the examination necessary. In this case the animals were running at large upon the highway, and were seized by the defendant in the strict performance of the duty enjoined upon him by the act as overseer of highways, in the district where the animals were found. Such a case is not only not within the principle decided in *Rockwell* v. *Nearing*, but is expressly excepted from it in the opinions of both the judges rendered in that case. Thus Judge Porter says: "The question whether the act is valid, so far as it relates to the seizure and sale of animals running at large in a public highway, is not involved in the present appeal. That issue might well be controlled by considerations connected with the police powers of the government." On this point also Judge Morgan says, with equal explicitness, when speaking of the power of the legislature to authorize the seizing of cattle running at large on the highway, that "it may properly be called the police power of the legislature which they are authorized to exercise for the public good;" and he adds, "that, upon the ground that it is an injury to the public for cattle to be running at large upon the highways, the legislature may punish the owner for

Campbell *v.* Evans.

permitting it." Whatever opinion, therefore, we may entertain as to the remedy provided by the statute in relation to private trespasses—concerning which I have a pretty clear conviction that the act in its amended form is not obnoxious to judicial condemnation—I think it beyond question that as applied to the case of animals at large in the highways, as were these of the plaintiff in this case, the provisions of the act of 1867 are clearly within the legislative authority, as a just and beneficent exercise of the police power of the government.

The only other objection which seems to me to have much force or pertinency is, that no jurisdiction was given to the justice, by the proceedings, to hear and entertain the case. The cattle were found running at large in the highway, and the duty of the defendant, by virtue of his office, was to seize them. He is then by the act to make complaint in writing, stating the facts, to a justice of the town, who is by section 3d thereupon clothed with jurisdiction to hear and determine the matter. If the complaint is sufficient, jurisdiction is conferred, and if any irregularities subsequently occur, they are, I suppose, to be corrected by an appeal, for which ample provision is made by the 6th section of the act. In what respect did the complaint fail to give jurisdiction to the justice? On the trial before the justice, the objection was merely that the complaint was insufficient, and on the trial at the circuit, that the complaint was not in accordance with the statute, and failed to confer jurisdiction, without in either case specifying any particular in which it was insufficient, or failed to comply with the statute. On the argument, the only plausible objection made is that the complaint does not state that the animals were running at large "by the sufferance or permission of the owner," in which event, only, can the penalty provided by the act be imposed. The conclusive answer to this is, in my opinion, that the question whether the escape has been suffered or

permitted by the owner, is not a jurisdictional fact. The first section of the act makes it unlawful for animals to run at large on the highway, and imposes upon overseers the duty of seizing and taking such cattle into their possession. And this is the only fact necessary to be shown to justify the officer in making the seizure; and if the complaint shows this, it gives the justice jurisdiction, in the very words of the statute, to hear and determine the matter. The section then goes on to provide further for the infliction of a penalty upon the person who shall suffer or permit any animal to thus run at large; and this inquiry is one to be made on the trial. The officer cannot be supposed to know, nor is he bound to inquire, how the fact is, in the first instance. He finds the animals at large, and his duty is performed in making the seizure, irrespective of the question how they came to be at large. If it is accidental or involuntary, or was brought about by the willful act of any other person, the facts may be proved by the owner, to defeat the claim for the penalty, and in the latter case, a remedy over against the person committing the willful act is given by the statute, as an ample penalty to be recovered by the owner. In the case of *Rockwell* v. *Nearing*, a doubt is suggested by Judge Morgan whether the seizure of cattle on the highway, under the act of 1862, would be lawful without showing that they were there by the negligence or permission of the owner; but he takes occasion to add that, " there may be some question whether the burden of proof is not cast upon the owner of the cattle to show that he is without fault in such a case." If this was a reasonable construction of the act of 1862, as I think it was, it is entirely applicable to the act of 1867, which gives the justice unquestionable jurisdiction upon the facts stated as they were in the complaint made to him by the defendant.

The return of the officer serving the summons was objected to on several grounds. One was that it did not

Campbell *v.* Evans.

appear by the return that Ashley, who served it, was constable, and the act provides that the service may be made by a constable, or by an elector authorized by the justice in writing to make the service. The proof of service was by the affidavit of Ashley, and it was proved on the trial that Ashley was a constable of the town of Elbridge. The act provides no form in which a return shall be made, and the sworn return in this case, with the proof that the same person making the service was a constable, was sufficient to authorize the justice to proceed with the case.

It was also objected to the return that it did not show that the service of the summons was in conformity with the statute. The act provides that the service of the summons shall be made by posting the same in at least six public and conspicuous places in the town, and one of said places "shall be the nearest district school-house." The question raised by the appellant's counsel is, whether the statute means nearest the justice's office, or nearest the place where the seizure was made. In respect to the return of the officer, he insists that if it means any thing, it means nearest to road district number eight in Elbridge. And he claims that the term "nearest" in the act should be construed to refer to the justice's office.

I think he is wrong in both respects. The return of the officer is in the very words of the statute, and is of course to be interpreted by it. The words of the act are not as full and specific as they might have been made. The expression is elliptical; but it obviously means the district school-house nearest the place where the seizure was made. It would be quite uncertain where the magistrate would live, or have his place of business. It might be in a remote part of the town quite distant from the residence of the owner, who, it would be most natural to infer, would not ordinarily live far from the spot where his animals would be found; and as the object of the law was to afford the means best calculated to give him notice, that object would

---

Campbell *v.* Evans.

---

be more likely to be effected by a copy posted on the school-house nearest the point of seizure, than one as suggested, nearest the justice. Such, in my opinion, is the obvious meaning of the language of the act, and the return is to be understood as having conformed to it, and was therefore sufficient.

It is insisted by the appellant's counsel that the whole proceedings were void for want of a personal service of notice, or of some kind of process by which the plaintiff, whose property was taken, could have had the opportunity to appear and contest the right to dispose in any way of his effects. It might be a sufficient answer in this case to say that the plaintiff can with no grace make that complaint, for he did get notice, and he did appear and objected to the proceedings, just as far as he elected to do so, and then voluntarily abandoned his case. But a better answer perhaps can be given in the words of Judge Denio, in the *matter of the Empire Bank,* (18 *N. Y. Rep.* 216:) "If we hold, as we must, that the constitution does not positively require personal notice in order to constitute a legal proceeding due process of law, then it belongs to the legislature to determine in the particular instance whether the case calls for this kind of exceptional legislation, and what manner of constructive notice shall be sufficient to reasonably apprise the party proceeded against of the legal steps which were taken against him." This the legislature have done in the act of 1867, and I see, as yet, no ground fairly to challenge their right to do so.

I think the judgment should be affirmed.

Judgment accordingly.

[Onondaga General Term, June 29, 1869. *Bacon, Mullin, Foster* and *Morgan,* Justices.]