Squares agt. Campbell.

## SUPREME COURT.

### BETSEY ANN SQUARES agt. JAMES M. CAMPBELL.

The *act of* 1867, *chap.* 814 amending chapter 459 of the laws of 1862, authorizing the seizure of *animals trespassing on a private enclosure* (or in public highways,) is *constitutional and valid.* (*This agrees with the case of Cook* agt. *Gregg, said to have been tried at the Madison circuit in October* 1868, *and judgment affirmed on appeal at the general term held in the sixth judicial district in January* 1870. PARKER, *J. writing the opinion, which has not been reported; and Fox* agt. *Dunckel* 38 *How.,* 136; *but is adverse to* McConnell agt. *Van Aerman,* 56 *Barb.,* 534.)

*Delaware Special Term, May.* 1871.

THE defendant in pursuance of chapter 814 of the laws of 1867, amending chapter 459 of the laws of 1862, on the 13th day of July, 1869, seized a colt of the plaintiff's, of the value of $150, which was trespassing upon his private enclosure. He immediately endeavored to make complaint to a justice of the peace of the town where the seizure was made in accordance with the requirements of said act. Before he had succeeded in doing so, the plaintiff brought this action of replevin to recover the possession of the property. The defendant justified under said act. On the trial, the court directed a verdict for the plaintiff. The defendant moves for a new trial on a case and exceptions.

WM. GLEASON, *for plaintiff.*
F. JACOBS, Jr., *for defendant.*

MURRAY, *J.*—On this motion, two points are presented for consideration. *First*: Is the said act as amended constitutional in authorizing the seizure of animals trespassing on a private enclosure? *Second*: If it is con-

stitutional, was the defendant in this action protected in seizing and retaining the colt as he did, before any complaint was made ?

In section 2 of chapter 459 of the laws of 1862, it is provided that it should be lawful for any person to seize and take into his custody and possession any animal which might be in any public highway, and opposite to land owned or occupied by him, or which might be trespassing upon premises owned or occupied by him.

Section three provides that on such seizure it shall be the duty of such person to give immediate notice to some justice of the peace or commissioner of highways in the same town, and that the justice or commissioner should give notice that the animal would be sold at a certain time and place, and on that day, sell the same at public auction, and out of the proceeds of the sale, pay officer's fees, and persons making the seizure, certain sums for each animal seized, and a reasonable compensation for keeping them to be estimated by the justice or commissioner and pay the surplus to the owner.

In the case of *Rockwell* agt. *Nearing*, (35 *N. Y.*, 302,) the constitutionality of this act was brought in question. It was virtually conceded, in the court of appeals, to be constitutional in authorizing a seizure of animals running at large on a public highway , but in authorizing a seizure of animals trespassing on a private enclosure, it was held to be unconstitutional. The reason for this decision was that it deprived the owner of his property without due process of law, in violation of section six, article one of the constitution of the state. The reasons are very clearly and satisfactorily stated in the able opinions of Judge PORTER and Justice MORGAN. This decision was made at the March term of that court, in the year 1866. On the 9th of May 1867, the legislature, by an amendment to said act, (*chap.* 814,) attempted to remove the constitutional objections to it. In citing the provisions of the amended act and in the

Squares agt. Campbell.

consideration thereof, I will only refer to it so far as it relates to private trespasses.

In section two it is provided that it shall be lawful for any person to seize and take into his custody, and retain until disposed of as required by law, any animal which may be trespassing on premises owned or occupied by him. Section three provides that on such seizure, it shall be the duty of such person to make immediate complaint in writing under oath, stating the facts, to a justice of the peace of the same town, and that such justice shall, thereupon have jurisdiction to hear and determine such matter, and shall, thereupon proceed in the same manner as in civil actions, except as specially changed by said act. And shall, forthwith issue a summons, stating the fact of such seizure and complaint, and requiring the owner or any party interested in the property seized, to show cause at a time and place specified to be not less than ten nor more than twenty days from the date thereof, why the animals seized should not be sold, and the proceeds applied as directed by the act. The summons to be served by a constable, or an elector duly appointed by the justice for that purpose—the service to be made by posting it in six different public places in the town. On the return day, the complainant and any person interested in the property or his agent, may appear and join issue, by the claimant filing an answer under oath denying the matters alleged in the complaint. That the subsequent proceedings shall be as in civil actions so far as they can be under the act. The issue is to be tried by a jury if either party desires it. If no person appears as claimant, and files an answer, or if on the trial the justice or jury shall find against him, the justice shall issue a warrant for the sale of the property. The sale to be conducted as a constable's sale—the proceeds to be paid to the justice. After which he shall adjudge the costs of the proceedings allowing the same fees as in civil actions, and allow the party seizing a certain sum for each animal seized, together with

the actual damages sustained by reason of the trespass, and a reasonable compensation for the care and keeping of such animals to be estimated by the justice. The justice to be allowed one dollar for each animal sold. All to be paid by the justice out of such proceeds, and the surplus to the owner.

By section four provision is made for the owner demanding and receiving a return of his animals on the payment of certain sums.

Section six provides for an appeal from the determination of the issue joined to the county court of the county.

Section seven provides, that on a determination of the issue against the complainant, the justice shall render a judgment for costs against him. If the justice or jury shall find the complaint to be malicious and without probable cause, the justice or jury shall assess the damages sustained by the owner of the animals, by reason of such seizure, and the justice shall render judgment for double the amouut assessed with costs.

The differences between the act as amended and the original act, mainly are, that the amended act provides for a regular and orderly judicial proceeding, and judgment by virtue of which the property is sold. The original act does not. The amended act also, provides for the person making the seizure recovering his damages by reason of the trespass, through the instrumentality of the proceeding. The original does not.

It has also been claimed, that the act as amended is unconstitutional on the same grounds as the original. The point has been distinctly made in a number of cases. In the case of *Cook* agt *Gregg*, tried at the Madison county circuit in October, 1868, the point was distinctly made. That was a case of private trespass, where the property was seized while trespasing upon the lands of Gregg. The action of replevin was not brought until after the adjudication by the justice of the peace. The justice at the circuit

held the amended act to be constitutional as to private trespasses, and the seizure and sale justified.   Cook appealed to the general term in the sixth judicial district, which held the same, Justice PARKER, writing the opinion.   That decision was made in January, 1870, having been argued in November, 1869.   The opinion of Justice PARKER, has never been reported.

In the case of *Fox* agt. *Dunckel*, (38 *How.*, 136,) decided in October, 1869, by the general term, of the fourth district, Justice POTTER writing the opinion, the same is held.

In the case of *Campbell* agt. *Evans*, (54 *Barb.*, 566,) decided in the fifth district in June, 1869, Justice BACON, writing the opinion, the amended act was held to be constitutionl as to animals running at large on a public highway.   In his opinion, Justice BACON, clearly intimates his opinion, that it was also constitutional as to private trespasses.

In the case of *McConnel* agt. *Van Aerman*, (56 *Barb.*, 534,) the general term of the fifth district held the amended act to be unconstitutional as to private trespasses.   This case was decided in December, 1869, before the judges had seen the decision in the fourth district.   In view of that fact, in the case of *Leavitt* agt. *Thompson*, (56 *Barb.*, 542,) the same general term reconsidered and reviewed the question, and reaffirmed the unconstitutionality of the amended act as to private trespasses.

Unfortunately, the court of appeals has not passed upon the question.

With the greatest respect for the opinion of the judges of the fifth judicial district, I think, duty in this matter requires me to follow the decision of the sixth district, more especially, when another district has held the same.

But as the general term of the sixth district gave no reasons for its opinion, and it does no appear that it considered all the objections made to the law, it may be well, on this occasion, to state the reasons for sustaining it.

Courts should proceed to the consideration of a question as to the constitutionality of an act of the legislature with great caution. It is a responsible and delicate duty courts have to perform. It is to be presumed that the act under consideration was not passed without mature reflection and full consideration of the provisions contained in it, and of the constitutional principles relating thereto. It is presumed to be constitutional. Yet, the courts have a right, and it is their duty in case they find the act to be in conflict with the constitution, to so declare it, and thus far hold it to be void and inoperative, (1 *Kent's Com.* 9*th ed.*, 500). But so careful have courts been in the performance of this duty, that they have repeatedly held that to warrant them in setting aside a law as unconstitutional, the case must be so clear that no reasonable doubt can be said to exist. (*Fletcher* agt. *Peck*, 6 *Cranch.* 128; *U. S.* agt. *Wheaton*, 10 *Wheat.*, 53; *Parsons* agt. *Bedford*, 3 *Peters*, 433, 438; *Ogden* agt. *Saunders*, 10 *Wheat.*, 294; *Sedgwick on Statute and Const. Law*, 592; *Roscvelt* agt. *Godard*, 52 *Barb.*, 545.) Full legislative powers are vested in the legislature of the state. It performs its duties under the restraints of the constitution of the state and of the United States, (1 *Kent's Com.* 9*th ed.*, 500).

The objection presented to the act under consideration is, that it is penal in its character, and so far as it authorizes the seizure of animals trespassing on a private inclosure it deprives the owner of his property without due process of law, in violation of section six of article one of the constitution of the state. That section, among other things, provides that no person shall be deprived of life, liberty, or property without due process of law. Judge PORTER, in the case of *Rockwell* agt. *Nearing*, very forcibly and correctly states what is meant by the words "due process of law" as used in the constitution. The whole may be summed up in these words: No person shall be deprived of his life, liberty or property, by force of a legislative enactment

without the due course of a judicial proceeding. It is of kindred principle to the inhibition of bills of attainder in the constitution of the United States (*subd.* 3, § 9, *art.* 1). No law can be passed taking the property of one person and giving it to another, without the safeguard of a judicial proceeding. Legislative bodies cannot assume judicial powers and perform the duties of judges, in addition to their own legitimate functions. It can take the property of individuals for public improvements only on rendering a just compensation. It has the power to provide the ways and means by which the rights of persons may be protected and their wrongs redressed, and to compel amends to be made to the party injured from the property of the person in the wrong. But it must be made through the instrumentality of some judicial proceeding. The nature and character of the proceeding, the practice to be adopted therein, the manner in which the parties shall be brought before the tribunal to give it jurisdiction, is within the province and constitutional power of the legislature. The nature of the process to be issued and the manner of service, and what circumstances may render it necessary to omit personal service, are proper subjects for legislative regulation (*The matter of the Empire City Bank*, 18 *N. Y.*, 214–216; *Johnson* agt. *Babcock*, 16 *N. Y.*, 246).

The rules of evidence to govern the courts in their proceedings and the competency of witnesses therein are also subject to its control; also the manner of enforcing the judgments of the courts; the property that may be seized, and the manner of seizure for that purpose; when the seizure of property is necessary to secure the anticipated judgment of either of the parties to the proceeding; the manner of its seizure and detention, and under what circumstances and on what evidence and authority and through what instrumentalities, are all subjects of legislative regulation.

In applying these principles to the act in question, I can not resist the conclusion that by a due exercise of its legit-

imate and constitutional powers, the legislature has obviated the constitutional objection existing in the original act, by providing in the amended act for a regular judicial proceeding, so as to constitute a due proceeding at law. It is not an action, but a special proceeding. It requires a complaint to be made on oath before the justice, a summons to be issued and served. In view of the fact that, in many cases, the owner of the animal trespassing is unknown, personal service is not required, but service by posting in six public places of the town is substituted. On the return of the summons, the parties may appear and join issue, and have a trial before the justice, or with a jury, as in civil actions. If the issue is found against the complainant, the justice is required to render judgment against him for the costs of the other party. If no one appears, or the issue is found in favor of the complainant, the justice is required to issue a warrant for the sale of the animals. The sale is to be made by a constable, as on an execution, the money to be paid to the justice. He is then required to assess the damages, and pay the costs, damages, compensation for keeping, and a certain sum for seizure to the captor. From this summary of the act it will be readily seen that it contains all the requirements of a regular judicial proceeding. It is, however, urged with much force, that service by posting as to a known owner of the animal seized, is not a sufficient service on which to predicate a due proceeding at law. With the propriety of the enactment, courts have nothing to do; that is for the legislature, in its wisdom and discretion, to consider. I deem it well settled that the legislature has the power to allow such service (18 *N. Y.*, 214, 215). Service by publication is allowed; service by posting on the door of a concealed defendant is allowed. In this case, it makes one rule of service for all, both when the owner is known and unknown. If the owner was unknown, more could not reasonably be required; if known, it would be well calculated to give the person notice of the proceedings;

so that the propriety of the manner of service cannot reasonably be questioned. The legislature is required to make general rules; it cannot make a rule for each particular case. It is, however, sufficient to say that the legislature deemed that mode of service sufficient.

That objection being removed, it is still urged that the allowances under the original act were held to be penal in the case of *Rockwell* agt. *Nearing,* in the court of appeals, and that the same are in the amended act with the addition that by virtue of the proceedings the captor is allowed to recover the damages he sustained by the trespass, and that if, as to the recovery of the damages, the proceeding is remedial in its character, as to the other allowances it is penal, and therefore not within the power of the legislature. I understand the court, in that case, to have held those allowances to be penal, and that they were made the instrument of depriving the owner of his property without due process of law, and to have held that the original act did not provide for a regular judicial proceeding. I have endeavored to show that the amended act provides for a judicial proceeding, in which the justice has jurisdiction of the parties and the subject matter. If I am right in that, the constitutional objection, held by the court of appeals, is removed. The legislature had the power to regulate the amount of the recovery in the judicial proceeding provided for. It had the power to allow the captor to recover double or treble damages. It had the power to allow him to recover, in addition to the damages upon his land, a fixed sum as an indemnity for his trouble in seizing the animals and removing them to a place of safety, also for keeping them, that the legislature has done in this proceeding. These allowances in this judicial proceeding are within the power of the legislature. There is reason for allowing to the captor more than he would in an action at law. The act is intended to meet cases where animals are wandering from place to place without a keeper, and trespassing upon

every spot where they can enter.   They are found in the grain-field, in the meadow, or the garden.   They must be attended to immediately.   In most of the cases, to notify the owner, if he is known, would be leaving the land-owner's property to destruction.   They must be removed at once ; they must be driven somewhere.   If the owner is unknown, or lives at a distance, where can they be driven? To drive them on the public highway, to wander on a neighbor's land, would be to cause them to commit new trespasses.   The most proper thing that can be done, is to take the animals trespassing to some place of safety.   The legislature has provided that the land-owner may do so, and secures to him, by this proceeding, an indemnity.

It is further urged that a person, blameless and entirely innocent of any wrong, is liable to have his animals seized, and be compelled to pay as required by said act, which would be unauthorized.   The force of the point is very much weakened by the amendment of the act by sec. 5 of chap. 424 of the Laws of 1867.   However, if he is innocent of any wrong, either by himself or his animals, his animals cannot be legally seized, and he cannot be legally compelled to pay any sum,   But every person is liable for the acts of his domestic animals.   He is bound to keep them upon his own land.   This requirement, however, is subject to the rules and regulations in regard to line fences. . If animals trespass, the owner is liable for the trespass.   If they are in the custody of a bailee, the owner may still be sued for their trespasses.   Whenever they are trespassing they may be seized by virtue of this act.   But when innocently upon another's land, they cannot legally be seized.   There is, therefore, nothing in this objection.

It is also urged that the act requires only the issue to be joined, and a trial to be had upon the right of seizure, leaving the amount of the captor's damages to be afterwards determined by the justice, taking that question away from the jury.   It is, therefore, claimed that the act interferes

with the right of trial by jury. I think, that is the true construction of the act, but it is not for that reason, unconstitutional. Due process of law does not necessarily import a trial by jury. (*Winehammer* agt. *The People*, 13 *N. Y.*, 378, 425.) The second section of article one of the state constitution, provides that the trial by jury in all cases in which it has heretofore been used, shall remain inviolate forever. This act provides for a special proceeding in which the main and vital issue is the right of seizure and sale. That is allowed to be tried before a jury or the justice at the option of the parties. The other questions are to be disposed of by the justice, among which is the amount of the captors damages. Those, the justice is to assess after he receives the money, and pay to the captor. Special proceedings of various characters, existed and were practiced, long before the adoption of the constitution. Proceedings too, in which the amount of damages sustained in consequence of an interference with lands was involved. Such as proceedings to ascertain the amount of damages sustained by a land owner, in having a public highway, plank road or railroad run through his lands. How those damages should be assessed, has always been subject to legislative control. As to the damages to be recovered, the proceeding is indisputably remedial in its character, and comes under the same principles and practice, and is sustained by the same reason as a proceeding to distrain animals damage feasant. In those proceedings, the damages were authorized to be assessed by the fence viewers, and such assessment has always been allowed, and sustained by our courts. There is no difference, in principle, between the two proceedings in this respect. The proceeding to distrain animals damage feasant, existed at common law, and was authorized by English statutes, and all of our own from the earliest period of our state. The legislature, therefore, was fully justified in assuming that this mode of assessing damages in such remedial proceedings, had existed

prior to the adoption of the constitution of our state, and therefore, was not within the provisions of the constitution, giving the party an absolute right to a trial by jury. (*Matter of Empire City Bank*, 18 *N. Y.*, 210). There is no constitutional objection to the legislature's authorizing the main issue in this special proceeding to be tried by a jury, and the damages to be assessed by the justice. It is made a part of the proceeding of which the original complaint and summons gives the justice jurisdiction. The act does not require any notice of the assessment to be given to the owner. The assessment being a part of the proceeding of which the justice had jurisdiction, the want of notice does not affect his jurisdiction of the matter or the constitutionality of the act. It might have been more wise and better if notice had been required when the owner is known, but with that the courts have nothing to do. It was for legislative discretion.

It has also been urged before me (and I am referred to a note of the reporter, to the case of *Fox* agt. *Dunckel*,) that by this act, the animals are allowed to be seized without process, and before the commencement of the proceeding, and therefore, the property is taken without due process of law. By reference to all the authorities it will be readily seen, that without due process of law as used in the constitution, does not mean the want of process by which the property is taken, but the want of a judicial proceeding in which it is taken, this act provides for a judicial proceeding, and the captor seizes and retains the property as a part of the proceeding.*  He is allowed to do so, because of the

---

* This is the precise point at which we consider the act unconstitutional. For, with the greatest deference, we consider the "proceeding" under which the seizure is made, a *legislative* proceeding, and not a judicial proceeding, nor a part of a judicial proceeding. It does not become a judicial proceeding so as to authorize a seizure, until the court gets jurisdiction of the parties or of the subject matter, which under this act, cannot be accomplished until complaint is made before the justice. Nor do we see any more propriety or authority for calling the act a judicial proceeding than " due process of law;" for it amounts to due process of law, if the proceeding can be called a judicial one, which authorizes the seizure of the property.

peculiar nature of the trespass, the immediate necessity of action and of some disposition of the animals trespassing, and to secure to him the result of the proceedings. He is required to make immediate complaint so that the proceeding may at once progress, and the property be not unnecessarily detained. This means that he shall proceed as soon as he reasonably can under all the circumstances. This mode of seizure is similar in principle to allowing an attachment to issue at the commencement of an action, and the defendant's property thereby to be seized and retained until sold on an execution on the judgment obtained in the action. The mode of seizure, the circumstances rendering it necessary, by whom, and how it is to be made, and on what process if any, when in an action or judicial proceeding, are all subjects of legislative regulation. No provision of the constitution is therefore, violated in allowing the property to be seized as by this act.

It has also been urged before me that this act takes away from the owner of the property seized the right of replevin. There is nothing in the act itself that takes away the right of replevin. The right of replevin when property is seized by virtue of this act, is not taken away by section 207 of the Code, which was in force at the time that this act was passed. That being so, the property thus seized, may be replevied by the owner, but if on the trial of the action of replevin, it should be established that the seizure was lawful, the owner would be obliged to return

Suppose a person should go unlawfully upon his neighbors wood lot, and commence a willful trespass, by cutting down and destroying wood and timber, and the neighbor, by virtue of an act of the legislature similar to the one under consideration in reference to the seizure of animals, should arrest the trespasser and take him off to jail and there detain him until complaint could be made, under the act, before a justice of the peace, and a trial had and damages recovered. &c. Would any sane man assert that the defendant was not unconstitutionally deprived of his *liberty* without due process of law, or that the act of thus taking him to jail was authorized by a judicial proceeding by an act of the legislature. The principle under the case supposed we conceive to be the same as that under the case stated— One having reference to the person and deprivation of liberty, and the other to deprivation of property. [REP.]

the property and subject it to the proceeding, or pay the sums necessary to redeem.

The conclusion to me is irresist ble, that the law now gives to the owner of the property seized by virtue of this act, the same right of replevin as it did in case of distress of animals damage feasant.

If I am right in these views, the legislature has not transcended its powers in the passage of the act in question.

I am satisfied, that the constitutionality of the act can be sustained upon another principle, to wit. It is entirely remedial in its character. If so, Judge PORTER, in his opinion, in the case of *Rockwell* agt. *Nearing*, virtually concedes it would be valid. In the original act, some of the allowances were penal in their character. A recovery for the damages was not provided for, therefore, the proceeding was not penal in its character. In the amended act, a recovery of the damages of the captor is provided for, and it is the object of the proceeding, and would be a bar to any other recovery therefor. The other allowances are for costs of officers and for the trouble and expense of the captor incidental to the judicial proceeding. So that what under the former act were penal, by the amendment, are made incidental to the main object of the proceeding which is remedial, to wit, the recovery of the damages.

I, therefore, hold the amended act to be constitutional and valid. The judge in the hurry of the circuit, directed a verdict for the plaintiff in this action of replevin.

The second point is, assuming the evidence on the part of the defendant to be true, and the act to be valid, was the defendant protected in holding the property at the time of the demand?

Section two of the amended act provides, that it shall be lawful for any person to seize and take into his custody, and retain until disposed of as required by law, any animal, &c. It is required that the captor proceed with reasonable

Squares agt. Campbell.

diligence, and make his complaint before the justice, and not unnecessarily retain the property before the complaint is made. There is nothing in the case showing want of diligence, neglect or abuse of the property by the defendant, that would render him a trespasser in holding the property, if the act under which he made the seizure, and was holding it, is valid.

The verdict must, therefore, be set aside, and a new trial granted, costs to abide the event.